Bridgeport Financial  Bridgeport Financial Bridgeport Financial All rise. This court now returns to the session. So, you may proceed. The case of Camacho v. Bridgeport Financial. Good morning, Your Honors. Richard Pearl for the Plaintiff Appellants. I'd like to reserve five minutes of my time for rebuttal. This case presents an issue that's vital to the continued enforcement of the laws passed by Congress to protect consumers from unfair debt collection practices. As this Court recognized in its decision on the merits, this lawsuit established an important right for consumers who dispute their debts in the face of an adverse Third Circuit decision, and it has since been followed by all the other courts since its decision. The plaintiffs were represented here principally by two attorneys. One was Rand Bragg, who is well recognized as one of the leading authorities on the Fair Debt Collection Practice Act in the country, an attorney with 33 years of experience at the time of this fee motion, and an attorney whose market value of his work had recently been established in the Northern District at $435 an hour. They were represented on appeal by Richard Rubin, an attorney with 31 years' experience, a leading appellate litigator of consumer law issues, as one appellate court had recognized, and a lawyer who charges his fee-paying clients $500 an hour. By the way, who took that appeal? Pardon? Who took that appeal? The defendants took the appeal. It was an interlocutory appeal. The judge denied their motion to dismiss, but granted them leave to take an interlocutory appeal. They were able to win a complete victory in this case, both in this Court and back in the trial court, full class relief. They won every issue, and they did it by spending 46 percent fewer hours than the defendants spent losing it. Yet, when it came time to determine their reasonable hourly rates, the district court compensated them on the basis of what it found was a nationwide flat rate for Fair Debt Collection Practices Act cases, without regard for the market rates in this community, without regard for the particular skills, experience, and background of plaintiff's counsel, and without regard for the type of services that were being requested for compensation in this case. Now, we have to get into the hour and rate calculations, right? Yes. Let me bring you to a point that I found particularly interesting in the district judge's order before we get to the calculation. The Court says in his opinion, it's page 2 of his opinion, it's record 244. While the Court acknowledges that plaintiff's three attorneys were already exceedingly well versed on the narrow legal question presented in this case, the Court nevertheless finds that the hours spent in the matter were reasonable. Now, doesn't that freeze him out? Because he's now saying in other parts of the opinion, regard to the attorney's fees, that, gee, you do this over and over again, you have all these foreign I can't give you all that money. But he's already said that the hours that they spent were reasonable. Exactly right. Now, where does that put us in our analysis? Where that puts you, Your Honor, is that the rate decision was an abuse of discretion. You can't say both. You can't say that these counsel were highly experienced and because of that were able to do this very efficiently and reasonably. It puts you specifically where you don't have to worry about the hours, you only have to worry about the dollars, the rate per hour. Uh-huh. All right. So your argument has to be addressed to the rate per hour. You started it to say that he didn't look at the comparable cases in the community. Right. That he looked at a national rate. And is that your basic argument as to the error? Well, our basic argument is that there were three errors in terms of the rate. He didn't look to the local community, which is well-established law in this circuit. He didn't – actually, four errors. He didn't look to the local community. He didn't look to the market value of comparable – work of comparable complexity. He only looked at Fair Debt Collection Practices Act cases. He didn't look at the type of services that were provided. None of the cases that he cited, that the district court cited, involved appellate work of the nature that was claimed here. Not one of them. A claim for appellate work. And fourth, he didn't look at the particular – Well, the hours weren't all for appellate work. Pardon? The hours here weren't all for appellate work, were they? No, they weren't. But they were all lumped in together. But I thought you – you said, A, it wasn't localized. Right. And E, you said he should have looked beyond Fair Debt Collection Practice cases. Right. Three, he looked beyond Fair Debt Collection Practices. So what is – I mean, if the cases that the court looked to were of comparable nature, the fact that they weren't Fair Debt Collection cases seems to be consistent with your own argument. Well, my point is not that they weren't Fair Debt Collection Practices cases or were not. My point is that the services – none of the services in any of those cases involved work as highly valued as the appellate work in this case. Well, you're not asking for a different hourly rate for appellate and trial work, are you? We didn't in this case, but I think it has to be taken into account. Well, if you didn't ask for it, why should we worry about it now? I mean, it can't be an error of the Court to say I'm going to give you the same rate if you didn't argue it should be a different rate. Well, we didn't argue it was a different rate because – well, actually, Mr. Rubin only did appellate work other than a few – an hour and a half of trial court work. His work was solely on appeal. So – but the point is that the case – excuse me. If you go back to Blum v. Stenson, rates are supposed to be set based on the qualification, skills, and experience of the particular counsel in that case. And our point is that the district court did not base the rates on the particular skills, qualifications, and experience of plaintiff's counsel. It based them on rates awarded to attorneys of wholly different experience. Sometimes we don't even know what level of experience they were, but certainly none of them with the expertise and reputation and skill and experience, Mr. Bragg and Mr. Rubin. So that is improper. That's a fundamental violation of Blum v. Stenson and the way the cases have come down all the way since then, including as recently as the Welch case in this Court. Am I correct that the record shows that Mr. Bragg in the similar type cases in the Northern District was awarded fees that were highly much more, $400-some-odd an hour, and that there is a conflict actually in the Northern District relative to Mr. Bragg's fees relative to this case in the award? Is that right? It seems to me that other case did not – elected not to follow what Judge Breyer did in this case. Uh-huh. So do we have a conflict in the Northern District between the judges about what standards we use? Obviously, Judge Breyer used a different standard. I believe it was the judge in San Jose. I'm not sure on the other case. I don't believe that was in the record before Judge Breyer. The only one – the only case that was in the record before – well, there were two cases in the record before Judge Breyer regarding Mr. Bragg's rate. One was the Diffenbaugh case in which he was awarded $435 an hour, and that rate was affirmed by this Court in an unpublished decision. There have been other decisions. You're right. You're correct, Your Honor, that there have been other decisions in the Northern District where judges have refused to accept this – the analysis that Judge Breyer used and awarded Mr. Bragg higher rates. Is there an issue here with regard to the time element of his historical reference to those cases out of circuit references, if you will, that he used, calling them in rough accord with numerous other courts that have considered the issue? Now, those seem to – the latest case there seemed to be something like 2006, but there are other cases that were later and in circuit that he didn't consider, and he didn't consider cases that weren't these type of actions but – and didn't go to the nature of the lawyer and the nature of the case and the expertise. Is that – and I heard you argue that. So is that also what you're claiming is his – his error was? Right. It's error to look at decisions that awarded rates in 1998 and 2000 and say, well, I'm going to take those rates and apply them now in 2006. Let me ask you one question, because you're getting to the end of your 5 minutes. Pardon? You're getting down to your 5 minutes, so I want to ask you one question. Then we'll give you 5 minutes. Thank you. I seem to recall somewhere, maybe they're not in the record, maybe they were cited in your opponent's papers, and maybe only on appeal, that there were a number of unpublished decisions in which one of these lawyers, it may have been Mr. Bragg, was only given $200 an hour for similar work. There was – the one decision in the record was the Wingate case. And that was a decision by Judge Walker in which he used a wholly different analysis. Yes. And that's the only one that's in the record? Pardon? That's the only one in the record. That I – that's my recollection, that that's the only one in the record. If they go – if you go back, are there going to be others in the record that will – because I think I got this from your opponent's papers, that there were a number of cases in which he was given only $200 an hour. I don't believe they were in the record before Judge Breyer at the time. In fact, there have been some other cases since then where he's been given $200, and there's been several others. I counted five or six where he's gotten a full rate. Well, I don't think the cases since then are very important, because they may well have been based on what Judge Breyer did. But I believe – I looked at this issue last night, and I believe the only one was the Wingate case. And in that case, let me explain that. Judge Walker used a whole different analysis where he bases the rates on – has nothing to do with particular expertise or skill and experience of the lawyer, but on the Bureau of Labor statistics and adds something to get a minimally – what a minimally competent lawyer would charge. And I don't believe that's the analysis that's appropriate. So I – All right. Thank you. We'll give you the five minutes, Your Honor. Thank you, Your Honor. If it pleases the Court, my name is June Coleman, and I represent Apelli's Bridgeport Financial. And I think – Well, let's start with a basic question. Isn't it an erroneous standard that Judge Breyer opposed when he didn't look to the comparable work in the community, but just instead cited a number of national cases in the similar field? Now, I know that one case he cited was a California case, but what he relied on was not the standard of what's comparable fees in the community, but what's comparable across the nation for this type of case. Isn't that a violation of our standard? Well, I think that if you look at the decision closely, what the Court actually said was, based on the circumstances of this case, I find a reasonable hourly rate is $200. And by the way, this is in accord with other cases in San Francisco as well as across the nation.  That's fine. If we disregard those other cases as a by-the-way, and that he bases on what he thought a reasonable fee would be in this – for this kind of work, isn't he supposed to look in the community and see what a comparable fee is, not just pick out of the air how much he thinks somebody should be paid for it? Well, and I think that the evidence before the Court, the record before the Court clearly substantiates a $200 fee. The Court had a declaration by Mr. Ellis that testified – not testified, but declared that his hourly rate, average hourly rate in the time – in the relevant time period was somewhere between, I believe, $200 and $225 per hour for all clients, not for insurance clients. That was the defense counsel, wasn't it? It was. Is he the one that took the case up on appeal? He and I did both. Did you win it? No, we did not. So should we factor that in? I don't believe that you should, because really the issue on appeal – Why did you take it up on appeal? The reason it was taken up on appeal was because there was a split of authority between the Third District and a lot of other cases. Third District? Third Circuit. And a lot of other – and a lot of cases, district courts. And the district court thought it was important enough to certify it for interlocutory appeal? Yes. So it was an important issue? It – You must have. You wouldn't have bothered us with it if you didn't. Well, Your Honor, the narrow, the very narrow issue that was decided on appeal was whether 1692 G.A. 3 – Did you think it was important enough to take it up on our interlocutory appeal? We thought that given the split of authority throughout the nation that it would give the debt collector industry guidance. Yes, you did.  And if you won, you'd be championing that, and you might even raise your rate when the next time you go out in the market, wouldn't you? I'm not being facetious. Well, actually – You put in your declaration and said, you know, I'm a senior associate, now a partner. I charge $200 an hour. I litigated this case. I took it up on appeal with my partner. We lost. We charged $200 an hour. The plaintiffs should get $200 an hour. They've been practicing longer. They may have a better or bigger reputation than we do, but you thought it was hard pressed for them to get $250 an hour. Well, I believe in our papers that we suggested that the proper rate was somewhere between $200 and $250. And I believe that – involved whether the inclusion of the phrase in writing was a violation of the Fair Debt Collection Practices Act, a legal issue that was extensively litigated by plaintiffs' counsel in other cases. These arguments were regurgitated in three other briefs in light of the appeal. Plaintiffs' counsel conducted two depositions and prosecuted a cookie-cutter motion for class certification. Based on all these facts, I do not believe that the services provided by plaintiffs' counsel justified $300 per hour more, and I'm even hard-pressed to say that their services justified $250 per hour. And I stand by that. And that's the evidence that's closest to what Judge Breyer came out with. Well, and I think that that is one aspect of the evidence. But I think there are other aspects of the evidence. What do we do with Mr. Chavez's and Mr. Sturtevant's declarations? Well, I don't believe that as the objections to evidence that are before you in the record, and as the opposition brief details, I don't believe that the Chavez and the Sturtevant declarations speak to the services that were provided. And I think that what Judge Breyer was getting at ---- Well, is that what Judge Breyer said? I ---- How do we know what Judge Breyer did with those declarations? I don't believe there's anything in the opinion that speaks to the two declarations. I have no idea what weight he gave them or why he discounted them. I believe that he looked at all the evidence, weighed the evidence, and came up with a $200-an-hour figure based on the services provided in the case, the complexity  I think that the defense counsel and plaintiff's counsel are equally skilled and have an equal reputation throughout the nation. Well, that means now you do insurance defense work? We do insurance defense work. We do complicated, complex business litigation. We do plaintiffs and defendants. You indicated to the judge in your declaration that this was sort of a cookie-cutter case. You do this over and over and over again. However, the judge found all their hours were reasonable. Now, a lawyer who's skilled has reasonable hours submitted to the judge, but the judge says, oh, heck, you're so good, I'm going to cut your fee. I mean, where does that come from? I want to find out, because that's exactly what the judge did. He said, you guys are really good. And, in fact, when he gave them $500 for the fees on fees, he said, you file this all the time. But he found their hours reasonable. But he said, but you know what? I'm just going to give you $200, just like the defense lawyers get. Now, what's the law that supports that? Well, I think that when you're looking at a lodestar amount. What's the law that supports that? And the law is that when you're looking at a lodestar amount, there are various criteria that you can use to impact either the hours or the hourly rate. Can't impact the hours here. They were reasonable. And I think that what happened was that the court looked at adjusting the rate and not double dipping into both categories. Well, because he said, you put the hours in, but they're double dipping hours, so I'm going to adjust the rate. Well, I think that when you're looking at the services provided. No, I mean, I think that's what you're trying to tell me, that because he found the hours reasonable, but because they're cookie-cutter hours, he should adjust the rate to reduce them. I think that when you're talking about a case where the pleadings are exact duplicates of other pleadings in other cases. And you don't spend the hours legitimately if all you have to do is copy them. And it doesn't take you the same number of hours. He said they spent the hours reasonably, which meant they weren't just copying things. Now, let's go back to the question I started with. Isn't the rule that the established standard is the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation? I believe that to be the case. Where in this opinion can you see that Judge Breyer took that into account? Well, I believe that when he said he took all of the circumstances of the case into account when coming up with this. That means the prevailing rate in the community for similar work performed that's a circumstance of the case? I believe it is. And, in fact, as the Court asked Mr. Pearl earlier, there was evidence in the case that there is a dichotomy in the northern district. I'd like to find a place where I could get a really good lawyer for $200 an hour. That would be a wonderful thing for this community and every other community. I will give you our card. Well, thank you. But you do insurance defense work. You know what? We do plaintiffs and insurance and non-insurance. We represent private clients. And the evidence before the Court was rates between $200 and $250 an hour. It wasn't just rates all across the nation. It was rates in the northern district. Well, that's not what he cites. What he says, you say it's an aside. But he says the Court finds in rough accord with numerous other courts that have considered the issue in published and unpublished decisions, footnote one, that a reasonable rate for fees in an action brought for the violation of a mandatory provision of the FDCPA is $200 per hour. And then he cites all the cases. Are those all FDCPA cases? No, they're not. Okay, so. I believe that Yahoo was cited. I believe Yahoo was not. Take Yahoo out. Are they all FDCPA cases? Yes, I believe they are. Okay, and one goes back to 1998. Did any of those involve a successful interlocutory appeal defense? Yes, I believe they did. Which one? Savino. Okay. And I'm referring to defendant's chart. I'm sorry, appellant's chart. Clark v. Quick Collect. Well, that was $250 in Oregon, where living is a lot easier than San Francisco. I did want to address to the Court. You don't have sales tax in Oregon. And what do we do with the law that says we have to consider the relevant community? Well, in the relevant community, the evidence before the Court was the Diefenbau decision, which was decided first, and the Johnson decision, which came in at $250 an hour and involved Mr. Bragg. In fact, Mr. Pearl and I were in front of the room. He didn't cite those decisions, did he? I'm sorry? He didn't cite those decisions, did he? He did not. So why would he cite nine cases that fell out of the circuit or out of the community and not cite the ones in the community if he had considered them? Well, as I interpreted the Court's order, I believe that the Court took into consideration all the circumstances of the case, including market rates for FDCPA cases in the Northern District, and then referenced the fact that not only did his determination mean that it was $200 an hour, but in addition, these other cases seemed to support his decision. And I don't believe that his order actually says or actually states that because these decisions were decided and we have to look at them because it's a national rate, that means that I have to decide on $200 an hour. But I would like to point out to the Court — I don't believe you are. I believe that the market rate is the reasonable market rate in the community based on the skill of the attorney and the services provided, the complexity of the case. And you suggested that Chavez and Sturtevant were inadequate because they didn't relate to the facts of this case? That is correct. But didn't they establish that for comparable work in the community? Wasn't that the point of their declarations? Their declarations, and if you read them closely, I believe that their declarations stated that for complex civil litigation, this is the reasonable Involving consumer class actions and the like. And I believe some portions of the declarations were not limited to consumer class actions. But I think the point is, is that what were the services provided in this case? What was the complexity level of this case? And in this case, we are talking about an issue that Rand Bragg brought up in the 3rd District, took to appeal in the 3rd District. We're talking about — Circuit. District. We put it within California. Oh, yes. I apologize. And Mr. Berg raised the same issue in the Northern District in other cases. So this is an issue that was very familiar with them, and I do not believe that the complexity — So if somebody becomes an expert in a criminal defense, like David Boies, for example, who's an expert, he should charge $200 an hour because he knows the law so well, so well, that he should not be paid a premium for being such an expert. I believe that the issue is noncomplex, that he should charge $200 an hour. Okay. So those lawyers who charge more than $200 an hour should be excluded from the practice or reduce their fees accordingly? I mean, that's what the judge said. As someone who offers her services in complex civil litigations, class action, plaintiffs and defense work, I cannot get more than $200 to $250 an hour. Because that's how much they'll pay you. That's the market on your level. It is the market on my level. As a nationally recognized expert in the FDCPA realm in the Northern District in San Francisco. Okay. I speak as frequently as Rand Bragg does at national conventions. Maybe you ought to be working for Bragg. You're underpaid, aren't you? But I would like to — I don't think I am, Your Honor. But I would like to make two points. One is, is that Johnson v. Credit International addressed this very same issue. The Ninth Circuit — plaintiffs brought that up to the Ninth Circuit. Mr. Pearl and I stood before the Ninth Circuit in the fall of last year. The hourly rate was affirmed. If you look at the decision in Johnson v. Credit International, I believe that the decision is very similar to the decision in this case. The second thing I'd like to point out is in looking at the cases that were cited by the judge, Judge Breyer, if you look at those cases and you look at what was at issue in those cases, they were non-complex FDCPA cases. That is not to say that there are not complex FDCPA cases in which an hourly rate higher than $200 to $250 an hour would not be unreasonable. But these were non-complex cases dealing with statutory interpretation or in which there were — they were simple cases that — What case is this? Johnson v. what? Johnson v. Credit International. In your brief, it's cited as a district court opinion. It is a district court case. It was taken up on appeal. And oral argument was heard, I believe, in either September or October. And it was affirmed in an unpublished decision. Okay. Then you can't cite it. No, I can. Oh, now you can? Now you can. Yeah. For what it's worth. Okay. I merely point — Memorandum disposition? I merely point out that it is at the same level, the district court opinion is at the same level as the Diefenbau decision in which they determined it was approximately $400 an hour. Given the weight of those two cases, same attorney, Mr. Bragg, the court went for the lower rate. I don't believe it was an abuse of discretion. I don't think it was an erroneous application of law. And I think that this Court should affirm the decision. What was the date of the Johnson again? It was six months after Diefenbau. And I'm — That's okay. That's all right. I just wanted a relative time. The — 2005 was the district court decision. 2000 — November of 2007 was the affirmation by the Ninth Circuit. Who's the district judge? It was Conti. Judge Samuel Conti. And Diefenbau was decided by a magistrate, Magistrate Spiro, both out of the San Francisco Division of the Northern District. That's all. Thank you, Your Honor. Thank you. I don't want to eat up your time, but I want to ask you one question. Sure. Because it hasn't been troubling me. The statute sets up the cause of action, blah, blah. And then it also sets up the recovery. In the case of a successful action, the cost of action together with reasonable attorney's fees is determined by the court. Now, it doesn't seem like that the statute was trying to set up a special designed attorney's fees range for this kind of action, reasonable attorney's fees. That throws us in a blum. Right. And throws us into a lodestar. Absolutely, Your Honor. And that's the way the statute has always been interpreted until this decision. So there's no really statutory restriction. No. And we're dealing with attorney's fees in general. No. And, I mean, you might compare it, like, to the Equal Access to Justice Act. We haven't cited this, but, for example, the Equal Access to Justice Act, where you get fees against the Federal government, sets a rate, maximum rate. This statute does not and has never been interpreted to do that. Do you have any comment on the Johnson case? Well, I don't. I do. I don't. First of all, Johnson is an unpublished decision, and it's not presidential. Secondly, I don't believe Johnson was in front of Judge Breyer. Johnson did not involve anywhere near the complications of this case. It did not involve a Ninth Circuit appeal. It did not involve the number of contested issues. Yeah, but that goes back to the hours. See, that's what's troubling me. If the severity of the case is indicative of the rate, then that means that your folks and all these other lawyers are going to have to come in and say, well, this is my rate for a hard case, this is my rate for an easy case. And so that says, well, lawyers who charge high rates shouldn't take these cases. There's something wrong with that analysis, in my way of thinking, because if my rate is such and such, and if I'm free to practice in this area, and if the judge says I have reasonable hours, then do I get reduced because I'm so good? I don't think you should, and I think that's the error in the judge's opinion. If an expert, attorneys with great expertise like the attorneys here are able to do the case in a reasonable number of hours, in this case 46 percent less than the defendants, they should not be penalized by being told that your rate is going to be the rate that would be paid to someone without this expertise. But he went to rates outside of the circuit. He did not consider the relevant community. Now that we have the relevant community, Northern District, and there happens to be a conflict between the judges, it sounds like it's what judge you draw. How do we walk into that? I think if this Court simply reaffirms the standards that are appropriate in these kinds of cases, that you look to the rates charged in the local community for work of comparable, for comparable types of services, and look at the unique experience and expertise of the lawyers, and then decide is the rate they have requested in line with the rates that other attorneys with comparable backgrounds charge for comparable work? And if it is, then that's a reasonable rate.  Okay, so if Judge Breyer, say we were to remand this and say we don't, we're troubled by your going out of circuit here, please tell us, or please make a finding along the lines you've just discussed. And he says, okay, if you didn't get it the first time, let me be explicit. I took a look at Ms. Coleman's declaration. I discounted the declarations of Sturdivant and Chavez. I know this case inside and out. Yes, you did successfully defend me on an interlocutory appeal. I thought it was an easy issue then. I think it's an easy issue now. You've got the benefit of the hours of defending successfully my opinion. I look at Judge Conte. I look at Judge Walker, blah, blah, blah. And I decide $200 an hour is what it ought to be for this kind of a case. Then that's what you're looking for. Then we come back here. It's not the result you're looking for. I don't believe Judge Breyer would come to that decision if he evaluated the case on improper factors. And I believe, as the Court indicated earlier, the Sturdivant and Chavez declarations are very specific about what is the appropriate market rate for this kind of case. And in fact, both of them are very specific about their knowledge of Mr. Bragg, Mr. Rubin, and Mr. Berg, and what their skills and qualifications would command in the local market. I don't believe that insurance defense rates are the applicable standard, because as we've seen from Mr. Coleman's declaration, they charge the same rate for a beginning associate that they charge for her work. It's totally undifferentiated by the level of expertise or level of experience that you have. It's a different market. And if the court, Judge Breyer, were to evaluate the market properly, there's no way that he could come to a conclusion that skilled and experienced attorneys like Mr. Bragg and Mr. Rubin are worth $200 an hour in this community. Well, I do notice Chavez's rates gone up since I last litigated against him, so. Yes. Our case does kind of strange, though, because being locked into the reasonable rate determination, he puts himself into a different position than the judge who says, wait a minute, you've put in all kinds of hours, you guys are experts, and I'm going to cut your hours. He didn't do that. So now we are in a pure rate analysis. Exactly. And I think the reason the very fact, I think, Your Honor, hits the nail on the head, which is if you have this kind of expertise, and if you're efficient, and you spend a reasonable number of hours, given your background and experience, we're going to somehow penalize you for that. Essentially, what Judge Breyer is saying is that an attorney whose worth is $200 an hour, an attorney with none of this background and experience, could have done this case the same, in the same number of hours as Mr. Bragg and Mr. Rubin and Mr. Berg. And I don't see that that's a plausible explanation whatsoever. And, in fact, when we go back and look at his decision, he didn't consider any of that. There is nothing in there about, I'm taking into account all the circumstances. He just says, giving you the rate you request would be unreasonable, and I'm going to look at these other decisions, which we've talked about. Thank you, counsel. I think we've covered it. Thank you very much. Thank you. Thank you, both. The case is now given and submitted. The Court will stand at recess for the day. All rise. This court's decision stands adjourned. Thank you.
judges: Reinhardt, Brunetti, Fisher